UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LORRAINE PILITZ, AUTOTECH
COLLISION INC., and BELLMORE
COLLISION, INC.,

            MEMORANDUM AND ORDER

     Plaintiffs,     CV 07-4078

 -against-         (Wexler, J.)

THE INCORPORATED VILLAGE OF
ROCKVILLE CENTRE, et al.,

     Defendants
----------------------------------------------------------X
APPEARANCES:

 KARASIK & ASSOCIATES
 BY: SHELDON KARASIK, ESQ.
 Attorneys for Plaintiffs
 28 West 36th Street, Suite 901
 New York, New York 10018

 KAUFMAN BORGEEST & RYAN, LLP
 BY: JOAN M. GILBRIDE, ESQ.
 Attorneys for Rockville Centre Defendants
 200 Summit Lake Drive
 Valhalla, New York 10595

 HARRISON J. EDWARDS, ESQ., VILLAGE ATTORNEY
 INCORPORATED VILLAGE OF FREEPORT
 Attorneys for the Freeport Defendants
 46 North Ocean Avenue
 Freeport, New York 11520

 MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS, LLP
 BY: BRIAN S. SOKOLOFF, ESQ.
 Attorneys for the Malverne Defendants
 240 Mineola Boulevard
 Mineola, New York 11501

WEXLER, District Judge:

This is an action alleging federal civil rights claims pursuant to 42 U.S.C. §1983 ("Section 1983"), claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and state law claims. The factual allegations underlying all claims are the same. Essentially, the individual Plaintiff Lorraine Pilitz ("Pilitz"), alleging that she is the only female owner of towing businesses in Nassau County, states that she has been deprived of the right to operate those businesses on account of her gender. Corporate Plaintiffs Autotech Collision, Inc. ("Autotech") and Bellmore Collision, Inc., ("Bellmore") are the towing businesses operated by Pilitz.

Named as Defendants are three Nassau County Municipalities – the Villages of Rockville Centre, Freeport and Malverne (collectively the "Villages"). Also named are officials and employees of the Villages. With respect to the Village of Rockville Centre, Plaintiff names the Village Board of Trustees, the Village Mayor, and four employees of the Rockville Centre Village police department (collectively, along with the Village of Rockville Centre, the "Rockville Centre Defendants"). With respect to the Village of Freeport, Plaintiff names the Freeport Village Board of Trustees, the Freeport Village Mayor, the Chief of Police, the Village Attorney and an employee of the Freeport Police Department (collectively, along with the Village of Freeport, the "Freeport Defendants"). Finally, with respect to the Village of Malverne, Plaintiff names the Malverne Village Board of Trustees, the Freeport Village Mayor and the Freeport Chief of Police (collectively, along with the Village of Freeport, the "Freeport Defendants").

Presently before the court are the motions of all Defendants, pursuant to Rule 12 of the

2

Federal Rules of Civil Procedure, to dismiss. For the reasons set forth below, the RICO claims which are pled solely against the Villages, are dismissed. The motions are, in all other respects, denied.

## BACKGROUND

I. <u>The Allegations of the Complaint</u>

In light of the fact that this case is presented, at this juncture, as a motion to dismiss, the court accepts as true the facts set forth in Plaintiffs' complaint.

The facts alleged in support of the claims against all Defendants are similar. The Village Defendants, along with their named officials and employees, are alleged to have worked together to deprive Pilitz and her companies of the privilege of doing business on the same terms as male-owned businesses. Plaintiff details facts and state court legal proceedings against each group of Defendants as follows.

A. <u>Allegations Regarding Violation of Established Rotations</u>

Autotech and Bellmore are towing and auto repair companies owned by Pilitz. These companies obtained tow licences from the Villages. A license was obtained from Rockville Centre in 2003. Pilitz alleges that, contrary to accepted rotational procedures established by Rockville Centre, her companies were not called for lucrative accident-related tow jobs, but was, instead, called only for impound towing jobs. Pilitz alleges similar discriminatory treatment from Freeport. As to Malverne, Pilitz alleges that Malvern employees steered potential towing jobs away from the plaintiff companies. Plaintiffs further allege that the Village Defendants communicated with each other and agreed to keep Pilitz from obtaining towing jobs in an effort to keep women out of the towing business. Pilitz also alleges that her fleet was unfairly ticketed

3

by law enforcement personnel in the Villages.

B. State Court Litigation with Rockville Centre

Pilitz states that her businesses were denied renewal licenses to do business in Rockville Centre in 2004-2005. The denial was communicated to Pilitz in a formal statement dated April 30, 2004. A public hearing was held on May 4, 2004, and the decision denying Pilitz a license to operate was issued on October 28, 2004. On November 22, 2004, Pilitz commenced a state court proceeding pursuant to Article 78 of the New York CPLR. The Article 78 petition alleged that Rockville Centre's decision was arbitrary and capricious, and lacked the required evidentiary support. Pilitz also argued, in the Article 78 proceeding, that the Village discriminated against her in violation of Section 1983. In connection with this claim, Plaintiff sought money damages and stated specifically, that "the Police Department treated [Pilitz] differently that all other towing services."

On December 6, 2004, the Article 78 court issued a temporary restraining order, the effect of which was to keep the Plaintiff companies on the Rockville Centre list of towing companies pending the outcome of the proceeding. While the Article 78 proceeding regarding Plaintiffs' 2005 license was pending, Pilitz was advised that she would be denied a license for 2006-2007.

On May 24, 2006, Plaintiff prevailed in the Article 78 proceeding regarding the 2005 license. The state court held that the decision to deny renewal lacked the required rational support in the record. Specifically, the state court reviewed the charges of misconduct alleged by the Village against Pilitz in support of the non-renewal decision, and held that no charge was supported by proper evidence. In addition to holding that Rockville Centre failed to rely on record evidence to support non-renewal, the Article 78 court also held that Pilitz failed to show

discrimination. In particular, the court stated that Plaintiff "failed to sustain its 'heavy burden' of demonstrating that [Rockville Centre] engaged in unconstitutionally disparate treatment and/or selective enforcement of its Code provisions and derivative regulations." In so holding, the court cited to Bower v. Town of Pleasant Valley, 2 N.Y.3d 617, 630-31 (2004), where the New York Court of Appeals noted the difference between action that is "arbitrary and capricious" in the "Article 78 sense," as opposed to constitutionally arbitrary behavior, sufficient to support a federal claim pursuant to Section 1983. Thus, the Article 78 court decided in favor of Pilitz on the ground that the decision of the Village lacked the required evidence to support its decision, but declined to hold that the Village acted in an unconstitutional manner. Pilitz was directed to "expeditiously" file a new license application and Rockville Centre was directed to render a timely determination with respect thereto. The previously entered TRO was ordered to remain in effect pending resolution of the new application.

Despite the order of the Article 78 court, it appears that Pilitz failed to enter judgment on the decision and/or to submit a new application. Accordingly, Rockville Centre moved, in March of 2007, to vacate the TRO. The state court held that Plaintiffs' failure to timely apply for a new license constituted an abandonment of the proceeding and vacated all restraints on Rockville Centre. Plaintiff thereafter moved to reargue the decision finding abandonment of her proceeding. On June 4, 2007, that motion was denied. However, Plaintiff was granted a towing license from Rockville Centre for 2007-2008.

C. Village of Freeport

Autotech was issued a license to operate a towing business within the Village of Freeport in 2003. The allegations against Freeport are limited to the time period preceding 2007, when

5

Plaintiff concedes that any discriminatory treatment stopped.

Plaintiff alleges similar facts in support of her claims against the Freeport Defendants as alleged against the Rockville Centre Defendants, and the court will not detail each factual assertion. Suffice it to say, however, that the Freeport Defendants are alleged to have discriminated against Plaintiff and her business in the assignment of towing jobs and the enforcement of local laws.

### D. Village of Malverne

Autotech was issued towing licenses from the Village of Malverne for the years 2003, 2004 and 2005. Plaintiff alleges that despite the issuance of licenses, her business received no towing referrals during 2003 and 2004. Plaintiff sates that she began receiving referrals during 2005, only after a meeting with the Malverne Village Trustees. Plaintiff alleges that Malverne explained its failure to refer tows to Plaintiff "because of the mess in Rockville Centre," and because they had been warned "by officials in Rockville Centre and Lynbrook 'not to deal with that woman because she is bad news.'" Plaintiff alleges that, despite the limited referrals that she received in 2005, Malverne refused to offer lucrative towing jobs to her business and that Malverne engaged in a similar pattern of harassment and discrimination as the other Village Defendants.

## II. Legal Allegations in the Complaint

Relying on the allegations set forth above, Plaintiff alleges five separate causes of action as set forth below.

Plaintiff's first cause of action alleges denial of Federal Constitutional Rights pursuant to Section 1983. Specifically, Plaintiff states a deprivation of her right to equal protection of the

6

law as guaranteed by the Fourteenth Amendment. In particular she alleges "class of one" disparate treatment. Plaintiff's second cause of action alleges denial of Plaintiff's rights to Due Process and Equal Protection under the Constitution of the State of New York. The third cause of action alleges tortious interference with contract. In connection with this claim it is alleged that Plaintiffs attempted to enter into valid contracts for the provision of automotive services with third parties and that defendants intentionally and unjustifiably procured the breach of such contracts. Plaintiffs' fourth cause of action, alleged pursuant to RICO, 18 U.S.C. §§ 1962, alleges that Defendants constitute an enterprise that engaged in a pattern of racketeering activity. Plaintiffs have amplified this claim by way of a RICO statement. That statement names only the Village Defendants as the entities against which the RICO claim is alleged. Finally, Pilitz sets forth a claim for negligent supervision, stating that the Village Defendants failed to supervise, monitor and control the activities of their employees, thus allowing the violations set forth in the complaint.

III. The Motions to Dismiss

All defendants move to dismiss. As to the RICO claim, it is argued that the Villages lack the ability to form the requisite intent necessary to support such a claim. The Rockville Centre Defendants argue that the outcome of the Article 78 proceeding requires dismissal of the Section 1983 claim on the ground of res judicata and/or collateral estoppel. The Malverne Defendants argue that Plaintiff's equal protection claim must be dismissed because Plaintiffs fail to plead disparate treatment. The individual defendants seek dismissal on the ground of qualified immunity. Dismissal of the state claims is sought on the ground that Plaintiffs have failed to file the necessary notice of claim under state law. Finally, Defendants raise a statute of limitations

7

argument. After outlining the applicable law, the court will consider the merits of the motion.

## DISCUSSION

I.  Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim of relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852*2 (E.D.N.Y. June 6, 2007). The

8

court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974.

II. The RICO Claim

    A. Legal Principles

Plaintiffs' RICO statement alleges RICO claims pursuant to 18 U.S.C. §§ 1962(a)(b)(c) and (d). As noted, the RICO claims are alleged only against the Villages, and not against any individual defendant in an individual capacity.

18 U.S.C. § 1962(a) ("Section 1962(a)") makes it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18 of the United States Code to "use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. §1962(a).

18 U.S.C. § 1962(b) ("Section 1962(b)") makes it unlawful for any person "through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. §1962(b). The purpose of Section 1962(b) is "to prohibit the takeover of a legitimate business" through racketeering. Wood, 311 F. Supp.2d at 355; Stolow v. Greg Manning Auctions, Inc., 258 F. Supp.2d 236, 245-46 (S.D.N.Y. 2003).

18 U.S.C. §1962(c) ("Section 1962(c)") makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

9

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. §1962(c). To establish a RICO claim pursuant to Section 1962(c), plaintiff must prove "(1) a violation of the RICO statute . . . (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 107 (2d Cir. 2001); New York Transportation, Inc. v. Naples Transportation, Inc., 116 F. Supp.2d 382, 387 (E.D.N.Y. 2000). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286 306 (2d Cir. 2001) (quoting, Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Finally, 18 U.S.C. § 1962(d) ("Section 1962(d)") makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of the RICO statute.

### B. The RICO Claim Is Dismissed

Courts in this circuit have considered whether a municipality is capable of forming the requisite intent to support a RICO violation. Each court that has faced this question has held that because a municipality cannot form the intent necessary to establish a RICO predicate act, any such claim must be dismissed. See, e.g., Guoba v. Sportsman Properties, Inc., 2006 WL 2792753 *4 (E.D.N.Y. 2006); Wood v. Village of Patchogue, 311 F. Supp.2d 344, 354 (E.D.N.Y. 2004). This court agrees that, as a corporation, a municipality is not capable of forming the required mens rea to support any underlying predicate offense. Guoba, 2006 WL 2792753 *4. Accordingly, all RICO claims must be dismissed. See Guoba, 2006 WL 2792753 *4; Wood, 311 F. Supp.2d at 354; Brewer v. Village of Old Field, 311 F. Supp.2d 390, 398

(E.D.N.Y. 2004); accord Nu-Life Constr. Corp. v. Bd. of Educ. Of City of New York, 779 F. Supp.248, 251 (E.D.N.Y. 1991); Frooks v. Town of Ciortland, 997 F. Supp. 438, 457 (S.D.N.Y. 1998).

III. The 1983 Claim Against Rockville Centre

Rockville Centre argues that Plaintiff's civil rights claim is precluded by the state court decision in the Article 78 proceeding. The court considers whether the claim is barred by neither res judicata or collateral estoppel.

A. Res Judicata

As to res judicata (claim preclusion), it has been held clearly that an Article 78 proceeding does not bar a subsequent action pursuant to Section 1983. This is because the full measure of relief sought by a civil rights plaintiff is not available in the context of an Article 78 proceeding. Colon v. Coughlin, 58 F.3d 865, 870 (2d Cir. 1995); Davis v. Halpern, 813 F.2d 37, 37 (2d Cir. 1987).

B. Collateral Estoppel

Collateral estoppel (issue preclusion) bars Plaintiff from re-litigating issues that were fully and fairly litigated, and necessarily determined in a prior proceeding. Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000); Carlen v. Department of Health Services, 104 F.3d 351, 351 (2d Cir. 1996); Colon, 58 F.3d at 869; Rameau v. New York State Dep't. of Health, 741 F. Supp. 68, 70-71 (S.D.N.Y. 1990). An issue that is "'necessarily decided' must have been both 'actually decided' . . . and necessary to support a valid and final judgment on the merits." Beechwood Restorative Care Center v. Leeds, 436 F.3d 147, 153 (2d Cir. 2006).

Rockville Centre argues that because Pilitz raised and litigated the same issues here as in

the context of her Article 78 Proceeding, collateral estoppel bars her claim here. In support of its position, the Village points out that the allegations in Pilitz's Article 78 Petition are, in many ways, identical to the allegations raised here. Thus, in addition to arguing that the Village's decision was not supported under state law by the required evidence, Pilitz argued, before the Article 78 court, that she was deprived of her rights under Section 1983 as a result of disparate treatment.

The court agrees that Pilitz raised her Section 1983 claims before the Article 78 Court. This fact, however, is not dispositive of the collateral estoppel issue. When the Article 78 court found in favor of Pilitz, it did so on the sole ground that the decision to deny renewal lacked the required rational support in the record. It was on this basis, and this basis alone, that Pilitz prevailed. The lack of evidentiary support is therefore the only finding that is necessary to the holding in favor of Pilitz in the Article 78 proceeding. The additional statement by the Article 78 court, that Pilitz failed to show unconstitutional discrimination, was dicta, not necessary to the holding, and therefore cannot form the basis for issue preclusion. Accordingly, the court holds that the claims against Rockville Centre are not barred by collateral estoppel.

IV.   Malverne's Motion to Dismiss the Equal Protection Claim

    A.   Legal Principles

The Fourteenth Amendment right to Equal Protection of the law is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Disabled American Veterans v. United States Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992). While an equal protection claim may be based upon the allegation that plaintiff was a victim of discrimination due to membership in a

protected class, Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995), the right to equal protection also extends to individuals who allege disparate treatment based upon ill will or without rational basis. Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). To establish an equal protection violation, a plaintiff must show treatment different from other similarly situated individuals. See Harlen, 273 F.3d at 499. Similarity is generally a factual issue for a jury. That rule is "not absolute, however, and a claim can be subject to summary dismissal where no rational jury could find similarity." Harlen, 273 F.3d at 499 n.2.

In addition to a showing of similarity, Plaintiffs must also show either that the disparate treatment: (1) was based upon "'impermissible considerations," including the "malicious or bad faith intent to injure," or (2) was wholly irrational or arbitrary. Harlen, 273 F.3d 500; see Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005); see also Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

B. Sufficiency of the Equal Protection Claim Against Malverne

Pilitz does not argue to be a member of any suspect or identifiable class. Instead, the equal protection claim is based upon an allegation of arbitrary and malicious disparate treatment. Such a claim requires a showing of disparate treatment coupled with a showing of either ill will or arbitrary and irrational official action.

Malverne asserts that the complaint is insufficient to state an equal protection claim because the Malverne towing procedure allows consumers to decide which towing company to use. Thus, it is argued, there can be no claim based prejudicial and malicious misuse of a towing list. Pilitz responds that the complaint, which alleges that Malverne police officers steered potential customers away from the Plaintiff companies, is sufficient to state a claim.

In this circuit there is no requirement that a plaintiff detail with particularity, instances demonstrating the disparate treatment alleged in the complaint. It is sufficient to plead disparate treatment on information and belief. DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003). Measured against this standard, Plaintiffs' complaint is sufficient in this regard. The complaint is also sufficient in the pleading of either ill will, or irrational action by Defendants. Specifically, Plaintiffs allege that Malverne subjected them to disparate treatment and that Malverne police officers steered potential customers away from the Plaintiff companies. At this state of the proceedings, the allegations of an equal protection violation are sufficient to survive a motion to dismiss. Accordingly, the court declines to dismiss that claim and allows the claim to proceed to discovery.

V. Qualified Immunity

The individual defendants argue that the claims against them are barred by qualified immunity. Qualified immunity bars an action against a government official where the conduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007), quoting, Harlow v. Fitzgerald, 457 U.S. 800. 818 (1982). A right is "clearly established" if "the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates the right." Danahy v. Buscaglia, 134 F.3d 1185, 1190 (2d Cir. 1998),quoting, Anderson v. Creighton, 483 U.S. 635 (1987)). Objective reasonableness is established if reasonably competent individuals could disagree as to the legality their actions. Malley v. Briggs, 475 U.S. 335, 341 (1986); Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). Summary judgment is warranted only if the court concludes that no reasonable jury could

14

conclude that it was objectively unreasonable for the defendant to believe that their actions did not violate a clearly established right. Danahy, 134 F.3d at 1190; Lennon, 66 F.3d at 420. Stated differently, "if the court determines that the only conclusion a reasonable jury could reach is that reasonable [officials] would disagree about the legality of the defendant's conduct" summary judgment in their favor is appropriate. Luessenhop v. Clinton County, 2007 WL 1063650 *6 (N.D.N.Y. 2007).

Upon review of the complaint and documents properly before the court, the court holds that the issue of qualified immunity cannot be decided at this time. Plaintiffs have set forth facts which, if proven to be true, may ultimately support their claims against the individual defendants. It is too early to judge the veracity of the facts alleged and whether any of the defendants will be successful in their claims for qualified immunity. Accordingly, the court declines to dismiss the complaint at this time on the ground of qualified immunity.

VI.     Statute of Limitations

Defendants seek dismissal of all Section 1983 claims accruing prior to September 28, 2004. Defendants correctly rely upon the three year statute of limitations applicable to civil rights claims. It is premature, however, to rule on the viability of Plaintiffs' particular claims at this point. Suffice it to say that no claims will be dismissed at this time, but the statute of limitations will be considered at a later, more appropriate time.

VII.    State Law Claims: Notice of Claim Requirement

Defendants seek dismissal of Plaintiff's state law claims on the ground that they are barred by the failure to file a timely notice of claim pursuant to New York General Municipal Law §50(I). Plaintiff argues that the state law claims are not barred because: (1) the claims

15

alleged are not subject to the notice of claim requirement and (2) in any event, Plaintiff should be granted leave to file a late notice of claim.

New York's notice of claim provision requires that all "tort" claims be presented to entities like the Villages before the commencement of an action. Gen. Mun. L. §50-I. The statute applies to actions alleging personal injury as well as those alleging "damage to real or personal property," attributable to the negligence or wrongful act of the defendant.

At the outset the court notes that Plaintiff's claims of tortious interference and negligent supervision fall within the definition of "tort" claims to which the notice of claim provision applies. With respect to the injury alleged, the issue is whether the statutory definition of "damage to real or personal property" is broad enough to include the money damages asserted here. New York State courts have held that such damages are within the statutory definition of "damages," and that therefore the notice of claim provision applies to cases alleging tortious interference with contract. Hannibal General Contractors, Inc. v. St. Matthew and St. Timothy's Housing Corp., 371 N.Y.S.2d 535, 537 (N.Y. County 1975) (applying broad definition pf personal property found in Section 39 of New York's General Construction Law which defines personal property to include both tangible and intangible property interests and excludes only interests in real estate), aff'd.; 390 N.Y.S.2d 588, 589 (1st Dep't 1976); see also R.A.C. Group, Inc. v. Board of Educ. of City of New York, 744 N.Y.S.2d 693, 693 (2d Dep't. 2002 (cause of action alleging tortious interference with contract held barred due to failure to comply with notice of claim provision); Roth v. Syracuse Housing Auth., 2002 WL 31962630 *9 (Onandoaga County 2002).

Having concluded that Plaintiffs' state law claims are subject to the notice of claim

16

requirement, the court considers whether Plaintiff may serve a late notice of claim. This court has discretion to allow for filing of a late notice of claim. N.Y. Gen. Mun. L. §50-e(5)("Section 50-e(5)"); see Tumm v. Town of Eastchester, 799 N.Y.S.2d 217,218 (2d Dep't. 2004). Section 50-e(5) sets forth the factors to consider on such an application. Those factors include the incompetence, infancy or death of the claimant, and justifiable reliance on settlement negotiations. N.Y. Gen. Mun. L. §50-e(5). Also included in the factors to consider, and particularly relevant here, are whether the defendant had actual notice of the facts essential to the claim, and whether the delay in serving the notice of claim "substantially prejudiced" the defendant. N.Y. Gen. Mun. L. §50-e(5). Notice of the claim is important given the fact that the statutory requirement exists to protect public entities from stale claims and to facilitate the timely and efficient investigation of claims. See Tumm, 799 N.Y.S.2d at 218 (construing Section 50-e). It is improvident to allow for service of a late notice of claim where thee is an absence of knowledge of the facts of the claim within a reasonable time. See Heffelfinger v. Albany Internat'l. Airport, 845 N.Y.S.2d 132, 133 (3d Dep't. 2007).

Under the circumstances here the court holds that it is appropriate to allow for service of a late notice of claim. The parties have been engaged in state court litigation of the issues raised in this case for several years. There is no question but that Defendants have been investigating Plaintiffs' claims over that period of time. This knowledge, coupled with the lack of prejudice, militates in favor of allowing for the filing of the late notice of claim. The court, of course, expresses no opinion as to the merits of the state law claims alleged. It holds only that the filing of a late notice of claim will be allowed, and that therefore the state law claims will not be dismissed for failure to timely file such notice.

## CONCLUSION

For the foregoing reasons, the court grants the motion to dismiss all RICO claims. The motions of Defendants are, in all other respects, denied. The Clerk of the Court is directed to terminate any outstanding motion.

SO ORDERED.

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
September 22, 2008