UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

| | |
|---|---|
| LORRAINE PILITZ, AUTOTECH COLLISION INC., AUTOTECH II INC., and BELLMORE COLLISION, INC., | Civil Action No.:<br>CV-07-4078<br>(ETB) |

Plaintiffs,

**DECLARATION OF
BRIAN GARDNER**

-against-

THE INCORPORATED VILLAGE OF FREEPORT,
and THE INCORPORATED VILLAGE OF
MALVERNE,

Defendants.

--------------------------------------------------------------------X

Brian Gardner, an attorney duly admitted to the United States District Court for the Eastern District of New York and the Courts of the State of New York, hereby affirms as follows under penalties of perjury:

1.      I am a member of Sullivan Gardner, P.C., former counsel of record for Plaintiffs in this action. This firm represented the Plaintiffs in this action from June 2010 through February 2011. The facts and circumstances stated herein are based on my personal knowledge.

2.      This Declaration is submitted in Support of Sullivan Gardner P.C.'s (the "Firm's") motion for a charging lien in the amount of $43,526.75 against settlement proceeds currently held by this Firm. The Firm is owed far in excess of the amount sought to be charged, however the settlement proceeds received from the Defendants in this action total $43,526.75 [1] (the "Settlement Proceeds").

---

[1] The original combined settlement amount from Malverne and Freeport was $45,000; however, Malverne, with Plaintiff's consent, deducted from its settlement payment $1,473.25 which it was owed for an expert

3.      The settlement occurred principally to obtain agreements with the Defendants as to a course of conduct concerning their towing procedures and treatment of the Plaintiffs' businesses. The payment of Settlement Proceeds was ancillary to the settlement.

4.      This Firm began its representation of the Plaintiffs in June 2010 shortly prior to the trial in this action, which began on July 26, 2010.[2] This firm took over the representation of the Plaintiffs from the firm of Gold, Stewart, Kravatz, Benes, LLP (hereinafter the "Gold Firm"), Plaintiff's prior counsel. The Gold firm moved to withdraw as counsel prior to the trial in this action, which application was pending at the time of our appearance.

5.      As set forth more fully herein, the file received by this Firm from Plaintiffs' prior counsel, approximately 1 month prior to trial, was in complete disarray, and did not contain any of the Gold Firm's work product in preparation for trial. As such, this Firm was required to work exhaustively to prepare for trial, including preparing trial books, exhibit and witness lists, subpoenaing third-parties for testimony at trial, opposing motions in *limine* filed by Malverne and Freeport, and drafting motions in *limine* on behalf of the Plaintiffs.

6.      During this time, Plaintiff Lorraine Pilitz was intimately aware of, and involved with, the work being performed by this Firm, constantly discussing it with us over the phone, and coming to our office for in-person meetings and strategy sessions. The state of the documents provided to us was contrary to our agreement upon retention,

deposition taken in this case, thus resulting in settlement proceeds actually received by the Plaintiffs of $43,526.75.
[2] Notice of Consent to Change Attorneys was filed by the Plaintiffs on or about July 1, 2010 (Docket No. 181).

which was that the file was organized and trial exhibits prepared. Indeed, Ms. Pilitz specifically stated that she would rather pay this Firm to prepare the case and documents, rather than pay the Gold firm for its file, which it withheld from us and claimed was trial-ready. This Firm thereafter proceeded to trial in this action, and performed extensive work in a lengthy and protracted settlement process which, as discussed more fully herein, was not concluded until the end of November 2010.

7.      The amounts sought through the within charging lien became due and owing prior to the substitution of this Firm for Plaintiffs' current counsel, and pursuant to clear terms of a retainer agreement entered into between the parties (the "Retainer Agreement"). A copy of the Retainer Agreement, dated June 10, 2010, is annexed hereto as Exhibit A.

8.      The Retainer Agreement principally pertains to work performed on the underlying litigation (the "Action"), but also discussed work performed on other matters, including, inter alia, matters "regarding business difficulties experienced with Long Island municipalities, Townships, and other agencies such as the NYS Department of Motor Vehicles" and "the filing of additional "notice of claims."

9.      Pursuant to the Retainer Agreement, the Plaintiff agreed to pay the firm a fee of $30,000 for the Action, upon the execution of the agreement. The Plaintiffs agreed to thereafter, upon the exhaustion of the $30,000 fee, pay for all work performed by the firm on an hourly-rate basis, and agreed to pay the firm 15% of any recovery produced

3

through a settlement of the Action.[3] The Plaintiffs also agreed to pay the firm all costs, disbursements and expenses it incurred in the representation."[4]

      10.     The Plaintiffs paid the $30,000 fee called for by the Retainer Agreement, but have unequivocally refused to honor every other payment obligation under the Retainer Agreement, resulting in a balance due to this Firm of $70,933.10.[5] The amount due comprises the following amounts:

        a.   $42,217.94 in hourly legal fees incurred in preparation for, and during, the trial of this action, up to the settlement-in-principle placed on the record on July 29 and July 30, 2010;

        b.   $11,846.68 in hourly legal fees incurred in the settlement process in this action, including negotiation and drafting of settlement agreements with Malverne and Freeport after July 30, 2010;

        c.   $7,199.50 in disbursements and expenses incurred in the representation;

        d.   $5,670.07 representing the 15% contingency fee called for by the Retainer Agreement (after subtracting expenses);

---

[3] The hourly-rate was reduced from what this Firm had initially contemplated. The contingency fee was included as an incentive to the Firm to enter the action at the late date.

[4] Pursuant to the Retainer Agreement, work performed on other matters outside of the Action is billed at the same hourly rates as for work performed in the Action. However, the Retainer Agreement further provides that, at the Firm's discretion, it could reject undertaking any work outside of the Action; if the Firm agreed to undertake any such work, the Firm could insist on the payment of an additional retainer. No additional retainer was requested with respect to the additional work undertaken. Other requested work was declined by the Firm, and the Firm and Plaintiffs subsequently ended their relationship.

[5] Since at least March 2011, we have sought payment of the amounts herein directly from Ms. Pilitz, and through Plaintiffs' current counsel, Cuomo LLP. Ms. Pilitz refuses to pay us any portion of the money due, and has refused to allow us to apply the settlement proceeds to these outstanding amounts. Plaintiffs' counsel has not provided any meaningful response to our repeated requests that payment be arranged, and has given us no indication whatsoever that his clients have any intention of paying any of the money due and owing. As such, the instant motion has been necessitated.

e. $3,998.91 in hourly legal fees in matters directly related and ancillary
to the Action and described in the Retainer Agreement.

A true and correct copy of this Firm's billing statements to the Plaintiffs are annexed
hereto as Exhibit B.

11.     As the amount due to this Firm far exceeds the amount of Settlement
Proceeds currently held by this Firm, we seek a charging lien against the total amount of
the Settlement Proceeds.[6]

12.     Requests for charging liens in federal courts sitting in New York are
governed by New York Judiciary Law §475. Pursuant to Section 475, an outgoing
attorney is entitled to a charging lien for work on the underlying action prior to the date
of substitution of counsel. See, Sequa Corp. v. GBJ Corp., 156 F.3d 136 (2d Cir. 1998);
Indu Craft, Inc. v. Bank of Baroda, 1996 WL 556935 (S.D.N.Y. 1996).

13.     The amounts sought to be charged herein, detailed in sections "A" through
"E" below, clearly fall within Section 475, as they were incurred in the underlying
litigation, or in matters directly related to the underlying litigation which are
encompassed within the Retainer Agreement. As such, we respectfully request a charging
lien in the amount of $43,526.75  against the Settlement Proceeds currently held by this
Firm, and an order allowing us to withdraw the lien amount to satisfy the amounts due.

---

[6] We note that the amount requested herein is greater than set forth in our pre-motion correspondence to the
Court requesting leave to file this motion. This is due to our further review and consideration of this matter,
pursuant to which we determined that an amount more than set forth in our initial letter is due and can be
properly requested through the within motion.

## I. AMOUNTS SOUGHT TO BE CHARGED

**A. Legal fees incurred in preparation for, and during, the trial in this action up through and including July 29 and July 30, 2010, the dates the settlements in principle with the Defendants were placed on the record, totaling $42,217.94.**

14.     This Firm was retained as counsel for the Plaintiff in June 2010, less than two months prior to the trial in this action which commenced on July 27, 2010. Plaintiff's prior counsel, Gold, Steward, Kravatz, Benes, LLP, refused to provide this Firm with any of its work product, but rather "dumped on us" approximately 15 boxes full of disorganized documents. As such, this Firm had to start from scratch to get the case trial-ready, and worked exhaustively in organizing the documents, analyzing what items of evidence could be introduced, preparing exhibit and witness lists, trial notebooks and subpoenaing third-parties. This work also included opposing motions in *limine* filed by both Malverne and Freeport, and making required motions in *limine* of behalf of the Plaintiffs.

15.     On July 27, 2010, we proceeded to trial before Your Honor, during which time we called numerous witness, both party witnesses and non-party witnesses who had been researched and subpoenaed.  Settlement discussions took place, culminating in settlements-in-principle with Freeport and Malverne being placed on the record before Your Honor on July 29 and July 30, 2010, respectively.

16.     All told, during the period up to and including July 30, 2010, this Firm performed extensive work on the Plaintiff's behalf, resulting in total billings for legal fees alone of $72,217.94. After applying the $30,000 fee paid by the Plaintiff, the total amount currently due and owing for this work is $42,217.94. Annexed hereto as Exhibit C is a true and accurate copy of the relevant portion of this Firm's billing statements

6

setting forth the work performed by this Firm prior to the settlement-in-principle placed on the record.

**B. Legal fees incurred during the settlement process totaling $13,602.40**

17.     This Firm seeks legal fees and expenses incurred during the settlement process in this action after the settlements-in-principle were placed on the record, from August 2, 2010 through November 29, 2010, totaling $13,602.40. [7] Annexed hereto as Exhibit D is a true and accurate copy of the relevant portion of this Firm's billing statements setting forth the work performed by this Firm during the settlement process.

18.     The settlement process began after a settlement-in-principle between the parties was reached during the trial in this action, on July 29 and July 30, 2010 (Docket Nos. 222, 223). Pursuant to the settlement-in-principle, the parties agreed that formal written settlement agreements were required, and that the written settlement agreements would be negotiated, drafted and executed by the parties. It was further agreed that the Settlement Proceeds would only become payable to Plaintiffs upon the execution of the agreements by the parties and ratification of said agreements by the respective Village Boards.

19.     During the settlement process, this Firm performed extensive and substantial work for the Plaintiffs in attempting to negotiate formal written settlement agreements between the parties, work for which we have not been paid. The settlement process became protracted, and resulted in numerous disputes between the parties, due in large part to Ms. Pilitz's insistence, in the first instance, that she had not agreed to a

---

[7] Pursuant to the settlement-in-principle placed on the record on July 29 and 30 2010, the parties agreed that formal written settlement agreements were required, and that the written settlement agreements would be negotiated, drafted and executed by the parties. It was further agreed that settlement proceeds, in the amount of $45,000, would become payable to Plaintiffs only upon the execution of the agreements by the parties and ratification of said agreements by the respective Village Boards.

settlement, followed by her instistence that certain provisions be incorporated into the settlement agreements that defense counsel would not agree to, and which, in this Firm's opinion, ran contrary to the settlements-in-principle placed on the record, and which were frivolous.[8] This dispute required numerous telephone conferences with Ms. Pilitz, defense counsel, and even an in-person meeting with Ms. Pilitz and her former counsel Scott Guardino to read through the agreements line-by-line. This Firm drafted correspondence to Your Honor outlining the dispute on two separate occasions, including a detailed six-page letter on November 15, 2010 (Docket No. 243). The dispute became so significant that Your Honor ordered a conference, which was held on November 4, 2010, to attempt to resolve the outstanding issues.[9] This resulted in our Firm submitting two proposed settlement agreements for each Defendant: one representing the agreement the Plaintiffs would agree to, and the other representing the one drafted by our Firm which we believed accurately reflected the settlements-in-principle placed on the record. At the Conference the Court admonished Ms. Pilitz in a manner analogous to my prior discussions with her regarding her insisted-upon submissions.

20.     All told, from the time of the settlement in principle to the So-Ordering of the settlement agreements, this Firm expended significant and extensive time and resources in the representation, totaling $11,846.68, for which we have not been paid. This work clearly falls within the scope of the Retainer Agreement and was absolutely necessary in order to obtain the Settlement Proceeds against which the within charging

---

[8] E.g., Ms. Pilitz insisted that she be able to choose which cars her company would tow.
[9] The parties were never able to reach an agreement, and thus, on November 29, 2011, Your Honor so-Ordered settlement agreements filed by defense counsel. (Docket No. 246). It was only after the formal settlement agreements had been put in place that defense counsel forwarded the Settlement Proceeds to this Firm.

lien is sought.  As such, we submit that we are entitled to a charging lien for these

amounts. Indu Craft, 1996 WL 556935 at *7 (charging lien applies to those services that

produced the recovery sought to be charged).

### C. Expenses incurred totaling $7,199.50

21.     This Firm incurred $7,199.50 in direct expenses required for the litigation.

Annexed hereto as Exhibit E is a copy of our billing records setting forth each expense

incurred. These expenses are comprised of fees for service of trial subpoenas on seven (7)

third-party witnesses (including investigation and location of the witnesses),[10] outside

vendor copying charges for copying exhibits, including a $2,548.58 bill from a printing

company which prepared the trial binders and exhibits used by this Firm at the trial in this

action (a copy of this bill is annexed hereto as Exhibit F),[11] and lesser amounts for travel

expenses to and from the Central Islip Courthouse and to our Firm.[12] All of these

expenses, save the mileage charges, have been paid to the respective third-party vendors.

All of the foregoing expenses are properly recoverable through a charging lien. See,

Sequa Corp., 156 F.3d at 147 (attorney entitled to lien to secure payment of costs

incurred prior to the date of substitution of counsel).

### D. 15% contingency fee

22.     Pursuant to the Retainer Agreement the Plaintiffs agreed to pay 15% of

any recovery produced by a settlement of the litigation. The settlement officially took

place on November 19, 2010, when Your Honor So-Ordered the settlement agreements.

---

[10] See, Exhibit E, Expense List, Entries 5132, 51607,52193, 52191, 55315, 55316, 55653, 55654, 55655, totaling $3,996.65. These invoices are for payment of witness fees to each of the seven witnesses subpoenaed,  investigation and research of each witness, and expedited service of process on each of those witnesses so they would have sufficient notice prior to trial.
[11] Exhibit E, Entries 51495, 51441 and 56060, totaling $2,791.71. These fees are for outside copying of exhibits, cassette tapes sought to be introduced in evidence, and six sets of trial binders.
[12] Exhibit E, Entries 51496, 51497 and 55787, totaling $885.25. Fees include travel to the Court and parking at our firm during pre-trial preparation.

This Firm obtained the settlement while counsel of record for Plaintiffs. Therefore, the 15% contingency fee became properly due and owing. As this action settled for $45,000, this Firm is entitled to the contingency fee totaling $5,670.07[13].

### E. Legal fees directly related, and ancillary, to the Action, totaling $3,723.91

23.    This Firm also expended significant resources in work directly related and ancillary to this litigation, totaling $3,732.91. Annexed hereto as Exhibit G is the relevant portion of the Firm's billing records pertaining to these legal fees.

24.    This work includes  preparing a Notice of Claim as against a non-party Village (Exhibit G, Entries dated 8/9and  8/10); correspondence with Freeport regarding licensing and permit issues (Entries: 9/22; 9/24; 10/14; 10/22; 10/25; 11/9; 2/7); successfully opposing Gold's motion for a charging lien[14] (11/3; 11/9; 11/30; 12/1; 5/19/11); attempting to resolve certain traffic tickets issued to Plaintiffs by the Village of Freeport (8/18; 8/19; 8/20; 8/24); correspondence with the Plaintiffs regarding Ms. Pilitz's arrest in September 2010 (9/14), a meeting with Rockville Centre, who had previously settled the Plaintiffs' claims against it, regarding the operation of its towing procedures and potential violation of its settlement agreement with the Plaintiffs (7/19/2010), and work to transition the representation from this Firm to Plaintiffs' new counsel Cuomo LLP (2/23).

---

[13] This amount represents 15% of the Settlement Proceeds after expenses were deducted from the Settlement Proceeds. In addition, it should be noted that while the settlement proceeds total $43,526.75, the actual settlement amount was $45,000 as agreed to on the record before Your Honor. The reduced amount of the proceeds reflects expenses paid to Malverne for an expert witness deposition, in the amount of $1,473.25, which the Plaintiffs agreed to pay to Malverne out of the settlement proceeds

[14] Gold filed a motion for a charging lien on December 2, 2010 (Docket No. 248). This Firm submitted opposition to the motion on December 10, 2010 (Docket No.249). Gold thereafter filed a motion for oral argument (Docket No. 250) which this firm successfully opposed (Docket No. 251). By Memorandum and Opinion dated February 2, 2011, Your Honor denied Gold's motion (Docket No. 257).

25.     All told, $3,723.91 has become due and owing for this work pursuant to the clear terms of our Retainer Agreement with the Plaintiffs. Much of this work clearly arose out of the underlying litigation. All of this work clearly falls within the terms of the Retainer Agreement. As such, and as discussed more fully below, this work is properly chargeable through the within charging lien. See, Sequa Corp., 156 F.3d at 147 (attorney entitled to lien to secure payment of attorneys fees prior to date of substitution of counsel).

### III. ARGUMENT

26.     Pursuant to Section 475 of the Judiciary Law, an outgoing attorney, such as this Firm, is entitled to liens in its favor to secure payment of reasonable fees and costs incurred prior to the date of substitution of counsel. Sequa Corp., 156 F.3d at 147.

27.     In submitting its application for a charging lien, the attorney must provide the court with contemporaneous time records which specify, for each attorney, the date, the hours expended, and the nature of the work done. New York State Assoc. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

28.     In this case, the amounts sought to be charged clearly fall within the terms of the Retainer Agreement, which covers work not just performed on the Action, but also to work performed on other matters regarding Plaintiffs' businesses and their relationship with the various Long Island municipalities. We have annexed hereto a copy of the Retainer Agreement pursuant to which the amounts sought to be charged have become due, and the itemized, contemporaneous billing invoices detailing the work performed, and expenses incurred, for which the within charging lien is sought. There can be no genuine dispute over the work performed, the amounts due, or that said amounts have

became properly due and owing under the Retainer Agreement, prior to the substitution of counsel. As such, we respectfully request that this Court order a charging lien against the total amount of the Settlement Proceeds, in the amount of $43,526.75.

29.     This Firm effectively and successfully represented the Plaintiffs through the trial-phase, and settlement-phase of this action. The substitution of new counsel for this Firm was recommended to the Plaintiff once the action had been officially settled. In the Firm's opinion, the attorney-client relationship had completely broken down at the end of the settlement process, due to Plaintiffs' insistence on maintaining a frivolous position that was without support in the record before this Court.[15] Indeed, Ms. Pilitz sought to maintain this Firm as counsel post-settlement; However, we suggested that other counsel be retained, as we believed that Ms. Pilitz was no longer taking our counsel and would continue to disagree as to the Firm's opinions and strategy. As our substitution was thus mutually agreed-upon, there can be no claim that we are not entitled to a charging lien as requested herein.

WHEREFORE, by reason of the foregoing, we respectfully request that the Court order and declare that a charging lien in the amount of $43,526.75 be placed on the settlement proceeds in this action, together with such other and further relief as the Court deems just, equitable and proper.

---

[15] Specifically, Ms. Pilitz insisted first that there was no settlement, and then insisted on incorporating terms in the settlement agreements for which there was no basis in the settlement on the record. This firm explained the basis for our objection to her position, however she persisted in maintaining her position. Ms. Pilitz went so far as to send correspondence to defense counsel and the court without this firm's knowledge alleging a wide-spread conspiracy (not involving the Firm).

Dated: New York, New York
      August 19, 2011

SULLIVAN GARDNER P.C.

By:_____
Brian Gardner
475 Park Ave. South, 33rd Floor
New York, New York 10016
(212) 687-5900

To:    Counsel of Record via ECF and First-Class Mail