UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
LORRAINE PILITZ, AUTOTECH COLLISION INC.,
AUTOTECH II INC., and BELLMORE COLLISION,
INC.,

                                         Plaintiff(s),        MEMORANDUM
                                                                 OPINION AND ORDER

                -against-                                                  CV 07-4078 (ETB)

THE INCORPORATED VILLAGE OF FREEPORT,
and THE INCORPORATED VILLAGE OF
MALVERNE,

                                              Defendant(s).
---------------------------------------------------------------------------X

       Before the court is a motion by plaintiffs' former counsel, Sullivan Gardner, P.C., for a charging lien in the amount of $43,526.75 against the settlement procured by plaintiffs in this action, pursuant to New York Judiciary Law Section 475. For the following reasons, the motion for a charging lien is granted in the amount requested.

FACTS

       Familiarity with the facts of the underlying action is presumed. The crux of this action is a civil rights claim by the individual plaintiff, Lorraine Pilitz, that the defendants discriminated against her and the plaintiff corporations with respect to the operation of her towing and collision business based on her gender–specifically, that the defendants unfairly denied her proper opportunities to tow accident-damaged or otherwise disabled vehicles pursuant to a rotation list of

-1-

officially approved towing companies.[1]  A trial in this action commenced on July 26, 2010.  On July 30, 2010, during the course of the trial, the parties reached a settlement, the terms of which were placed on the record before the Court, and the jury was dismissed.  The settlement eventually approved by the Court awarded plaintiffs $43,526.75 in damages, in addition to non-monetary relief designed to ensure that plaintiff and her businesses would not be denied towing opportunities by the defendants.

Prior to trial, plaintiffs were represented by Gold, Stewart, Kravatz, Benes LLP (the "Gold Firm").  On June 10, 2010, plaintiffs entered into a retainer agreement with Sullivan Gardner.  (Declaration of Brian Gardner ("Gardner Decl."), Exh. A).  The retainer agreement includes the following paragraph (the "Compensation Paragraph"), which governs the firm's compensation:

> In consideration of these services, you have agreed to pay the Firm a fee of thirty thousand dollars ($30,000), plus a contingency fee depending upon the matter.  This means that if you recover assets or funds from the Action, or any other matter undertaken upon your behalf by the Firm, greater than the costs and expenses incurred, you agree to pay the Firm a percentage of that recovery.  Accordingly, you agree that the percentage will be 15% of any recovery, whether such recovery is from a settlement or as a result of trial for the Action, and 30% for any other matter undertaken.  All attorney and paralegal work undertaken on your behalf will be billed pursuant to the following hourly rates: Peter Sullivan–$400, Brian Gardner–$395, Partner or Special Counsel–$350, Associate–$225 & $250, Paralegal–$100.  You specifically agree that your liability shall include all work undertaken by the firm on the Client's behalf.

---

[1] Initially, the Incorporated Village of Rockville Centre, its Board of Trustees and certain individuals employed by the Village of Rockville Centre were named as additional defendants. Plaintiffs subsequently settled their claims with the Rockville Centre defendants prior to trial.

(Id., Exh. A at 2 (strikeouts omitted)). The agreement further contained the following paragraph (the "Costs Paragraph"):

> It is specifically understood and agreed that all costs, disbursements and expenses which are incurred by the Firm on your behalf are not included herein and shall be paid by you upon receipt of a bill therefore. Costs include such items as, but not limited to, filing fees, experts, service fees, court reporter costs, messenger fees, and overnight deliver [sic]. All costs, disbursements, charges, and fees (experts, witness depositions), will be deducted off of any award, verdict, or settlement, prior to calculation of attorney's portion of the settlement.

(Id., Exh. A at 3).

The Gold Firm did not provide Sullivan Gardner with any of its work product, but provided "approximately 15 boxes full of disorganized documents." (Gardner Decl. ¶ 14). Sullivan Gardner's pre-trial tasks included "organizing the documents, analyzing what items of evidence could be introduced, preparing exhibits and witness lists, trial notebooks and subpoenaing third-parties. This work also included opposing motions in limine . . . and making required motions in limine." (Id. (italics omitted)). Gardner represented plaintiffs at several days of trial and in connection with the settlement agreement reached between plaintiffs and the remaining defendants, the Villages of Freeport and Malverne. Sullivan Gardner asserts that plaintiffs owe the firm $42,217.94 in hourly fees accrued up to and including July 30, 2010, the date of the settlement-in-principle; $11,846.68 in hourly fees accrued during the settlement process; $7,199.50 in disbursements and expenses; and $5,670.07 "representing the 15% contingency fee called for by the [r]etainer [a]greement;" and $3,998.91 in hourly legal fees accrued in connection with ancillary matters. (Id. ¶ 10). Thus,

Sullivan Gardner claims that plaintiff owes the firm a total of $70,933.10. (Id.). The firm seeks a charging lien in the amount $43,526.75, which is plaintiffs' total monetary recovery in the action. (Id. ¶ 2).

Plaintiffs oppose the application, asserting that the Sullivan Gardner's bills are inflated and overstate the value of their services; that the firm improperly seeks fees for work performed before it was retained; that the firms records include block billing, making it impossible to determine the reasonableness of the time spent; and that the firm improperly bills for ministerial tasks. (Michelen Affirmation in Opposition ("Michelen Aff.") ¶¶ 3-9). Plaintiffs further assert that they want the fee dispute arbitrated by the New York State Appellate Division's Joint Committee on Fee Disputes. (See id. ¶ 9); see also N.Y. Comp. Codes R. & Regs. tit. 22, § 137.0 et seq. (New York's Fee Dispute Resolution Program).

DISCUSSION

I.   New York Judiciary Law Section 475

New York Judiciary Law Section 475 "governs attorney's charging liens in federal courts sitting in New York." Itar-Tass Russian News Agency v. Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (citing cases). Pursuant to Section 475, "an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services." Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (citing N.Y. Judiciary Law § 475); see also Sequa Corp. v. GBJ Corp., 156 F.3d 136, 147 (2d Cir. 1998) ("Under New York law, an attorney dismissed without cause is entitled to liens in his favor to secure payment of reasonable fees and costs incurred prior to the date of

-4-

substitution of counsel."). To establish entitlement to a lien under Section 475, "there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney." Stair, 722 F. Supp. 2d at 267 (quotation omitted).

The charging lien should be fixed at the "the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of quantum meruit." Id. at 268. A court may use a retainer agreement "as guidance in determining the reasonable value of the services provided." Id. at 269; see also Ingber v. Sabato, 645 N.Y.S.2d 918, 920 (App. Div. 1996). However, "[t]he theory of quantum meruit, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien." Stair, 722 F. Supp. 2d at 268.

In determining the amount of a charging lien, the court may consider the following factors in addition to the retainer agreement: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained." Sequa Corp., 156 F.3d at 148 (citations omitted). A court may look to such factors as whether the fee was fixed or contingent, any time limitations "imposed by the client or circumstances," and the "nature and length of the professional relationship with the client." Stair, 722 F. Supp. 2d at 273 n.1 (citing Johnson v. Georgia Highwau Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). "[T]he determination of the reasonable value of the services at issue is a matter within the sound discretion of the trial court." Stair, 722 F. Supp. 2d at 269 (citing Sequa Corp., 156 F.3d at 149). Moreover, the Supreme Court has recently emphasized:

> [T]he determination of fees should not result in a second major

> litigation. The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants.

Fox v. Vice, — U.S. —, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011) (internal citations and quotation marks omitted)

II. <u>Sullivan Gardner is Entitled to a Charging Lien in the Full Amount of the Monetary Portion of the Settlement.</u>

As noted above, a retainer agreement may provide guidance as to the reasonable value of a law firm's services, although ultimately it is the theory of <u>quantum meruit</u> that should determine the amount of the fee. The parties to the agreement do not dispute that in addition to the $30,000.00 retainer, Sullivan Gardner was entitled to bill for all work done at the client's request, at the rates stated. This understanding is confirmed by the monthly billing statements that Sullivan Gardner provided to plaintiffs monthly, detailing the work performed, as well as the cumulative "balance due." <u>See</u> Exhibit "B," annexed to the Notice of Motion.

Thus, the Compensation Paragraph entitles Sullivan Gardener to three different categories of compensation: (1) the $30,000 retainer amount, plus; (2) an hourly fee for all work performed on the case or on ancillary matters; and (3) a contingency fee, calculated by taking the total amount of the monetary relief in the action, subtracting the amount of "costs and expenses," and taking 15% of that amount. (<u>See</u> Gardner Decl. ¶ 10).

The Compensation Paragraph states that "[a]ll attorney and paralegal work undertaken on

your behalf will be billed pursuant to the following hourly rates: Peter Sullivan–$400, Brian Gardner–$395, Partner or Special Counsel–$350, Associate–$225 & $250, Paralegal–$100." (Id., Exh. A at 2).

    A.    <u>The Reasonable Value of Sullivan Gardner's Legal Services</u>

In the Second Circuit, attorney's fees are determined by calculating the "presumptively reasonable fee," or the "lodestar" figure. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 117-18 (2d Cir. 2007), <u>amended on other grounds</u>, 522 F.3d 182 (2d Cir. 2008). The court determines the presumptively reasonable fee by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 453 (1983).

The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed. <u>See</u> <u>id.</u> at 433; <u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears 'the burden of documenting the hours reasonably spent by counsel . . . .'"). Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983). If the documentation is inadequate, the court may reduce the award accordingly. <u>See</u> <u>Hensley</u>, 461 U.S. at 433-34; <u>Molefi v. The Oppenheimer Trust</u>, No. 03 CV 5631, 2007 WL 538547, at *5 (E.D.N.Y. Feb. 15, 2007) ("'If such records are inadequate the Court may reduce the award accordingly.'"). Similarly, the court may adjust the calculated amount upward or downward based on factors such as those outlined in

Sequa Corp. See Sequa Corp., 156 F.3d at 148-49 (approving the lodestar method when analyzed along with the other factors relevant to a quantum meruit fee analysis).

1.     Reasonable Hourly Rates

The Second Circuit has clarified that when determining an award of attorney's fees, there is "a presumption in favor of application of the forum rule," Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009), such that courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee," id. at 174 (internal quotation marks omitted). In the Eastern District of New York, it has been determined that reasonable hourly rates are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates. See Builders Bank v. Rockaway Equities, LLC, No. CV 2008-3575, 2011 WL 4458851, at *8 (E.D.N.Y. Sept. 23, 2011); Olsen v. County of Nassau, No. CV-05-3623, 2010 WL 376642, at *4 (E.D.N.Y. Jan. 26, 2010) (determining reasonable hourly rates to be $375-$400 for partners, $200-$250 for senior associates and $100-$175 for junior associates); Gutman v. Klein, No. 03-CV-1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates).

According to Sullivan Gardner's contemporaneous time records, four attorneys billed time to this matter: PS (presumably Peter Sullivan), who billed at an hourly rate of $425; BG (presumably Brian Gardner), who billed at an hourly rate of $395 until the end of October 2010 and $400 thereafter; DM (presumably a senior associate), who billed at an hourly rate of $225; and CT (presumably a senior associate), who billed at an hourly rate of $225.

The Court will accept the billing rates for Peter Sullivan and Brian Gardner, who, as named partners in the firm, can be expected to command hourly rates near the top of the scale. Sullivan Gardner does not, however, provide any information on DM or CT–not their names, or experience, or specialties. The Court has deduced that they are senior associates because they are billed at a rate that the retainer agreement sets for senior associates. But it is impossible to determine whether these rates are reasonable when absolutely no information is provided for these two timekeepers. "Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested." Artemide Inc. v. Spero Elec. Corp., No. CV 09-1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010) (citing Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008)). Therefore, the Court will reduce DM's and CT's rate to $200, the minimum current rate for senior associates in the Eastern District. See Artemide, 2011 WL 5452075, at *4.

  2. Time Expended

In determining the presumptively reasonable fee, a court may adjust the hours actually billed to a number the court determines to have been "reasonably expended on the litigation." Henlsey, 461 U.S. at 433. The number of hours claimed must be "supported by time records [and not be] excessive or duplicative." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998); see also Hensley, 461 U.S. at 434 (excluding hours not "reasonably expended"). In adjusting the number of hours, the court "must state its reasons for doing so as specifically as possible." LeBlanc-Sternberg, 143 F.3d at 764.

Sullivan Gardner has provided the Court with copies of invoices containing the time billed

by its attorneys. (Gardner Decl., Exhs. B, C, D, E & G). The records specify "the date, the hours expended and the nature of the work done," as required. Carey, 711 F.2d at 1148. Sullivan Gardner did not provide a summary of each attorney's time expended. Based on the Court's independent calculation, the firm seeks reimbursement for a total of 284.33 hours, with Sullivan expending 1.17 hours, Gardner expending 149.37 hours, DM expending 113.79 hours, and CT expending 20 hours.

Plaintiffs object to the hours expended on three grounds: Sullivan Gardner seeks fees for time spent prior to the firm's being retained (Michelen Aff. ¶6); some of tasks on the records are block-billed (id. ¶ 7); and the firm has billed for "ministerial tasks (id. ¶ 8). The Court will address these objections in turn.

First, Sullivan Gardner seeks fees for work that occurred on May 25, 2010, May 28, 2010, June 1, 2010, and June 8, 2010.[2] (See Gardner Decl., Exh B at 1-2). However, the retainer agreement is dated June 10, 2010. (See id., Exh. A). Although New York law requires "an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee" to provide the client with a written letter of engagement or written retainer agreement, it does not require that the engagement letter or retainer agreement be provided and signed prior to the commencement of the representation. See N.Y Comp. Codes R. & Regs., tit. 22, § 1215.1. Rather, the agreement may be provided "within a reasonable time after commencing the representation." Id. The firm's billing statements indicate that the work performed before June 10, 2010, was necessary to the representation, such as reviewing the complaint, the court's prior rulings in the case, and local regulations. (Gardner Decl., Exh. B, at 1-2). However, these tasks are also tasks that might be performed when a firm is deciding whether or not to take on a representation. Moreover,

---

[2]The challenged charges total 2.67 hours of Gardner's time billed at $395 per hour.

the retainer agreement is silent as to when the representation began. Therefore, the Court will construe this ambiguity in the retainer agreement against the firm and exclude those fees. See Jacobson v. Sassower, 66 N.Y.2d 991, 993 (1985) (construing an ambiguous retainer agreement against the law firm who prepared it).

Plaintiff also objects to block-billed entries in the billing statements. Block billing–the "lumping together of discrete tasks"–"makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." Penberg v. Healthbridge Mgmt., 2011 WL 1100103, at *9 (E.D.N.Y. Mar. 22, 2011). When billing records reveal repeated use of block billing, "courts have used percentage reductions 'as a practical means of trimming fat from a fee application.'" Id. (quoting Carey, 711 F.2d at 1146). Although the great majority of the entries in the billing records are not block-billed, there are a number of entries that "lump[] together discrete tasks" that should have been included in separate billing entries. (See, e.g., Gardner Decl., Exh. B (entries for July 8, 2010; July 22, 2010; July 23, 2010; July 25, 201; Aug. 19, 2010; Nov. 3, 2010)). These are mostly entries by DM or CT. Therefore, the Court will reduce the hours attributable to those two timekeepers by 5%. See Brady v. Wal-Mart Stores, No. 03-CV-3843, 2010 WL 4392566, at *6 (E.D.N.Y. Oct. 29, 2010) (noting that across-the-board percentage cuts may be applied to specific attorneys).

Finally, plaintiffs complain that Sullivan Gardner attorneys billed for "ministerial tasks." It objects specifically to time billed by DM for "bringing tape cassette evidence to a professional copier" (id., Exh. B (July 23, 2010 entry) and "draft[ing] outline of contents [of boxes from the Gold Firm]" (id., Exh. B (July 12, 2010 entry); and time billed by CT for "telephone calls with printing [and copying] service" (id., Exh. B (July 23, 2010, and July 25, 2010, entries). "When time records

-11-

reflect . . . entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." Gordon v. Site 16/17 Dev., LLC, No. 11 Civ. 0427, 2011 WL 3251520, at *5 (July 28, 2011). The Court finds that the billing for delivering the tape cassette and phone calls with printing and copying services are ministerial. The total number of hours billed in the (block-billed) entries including these tasks is 10 hours. The Court will therefore decrease the total number of hours billed to CT by an additional 5 hours.

The Court calculates the firm's presumptively reasonable fee as follows:

| Timekeeper | Hourly Rate | Hours Charged | Reductions | Total |
|---|---:|---:|---:|---:|
| Peter Sullivan | $425 | 1.17 | | $497.25 |
| Brian Gardner | $395 | 138.46 | -2.67 hours | $53,637.05 |
| | $400 | 10.91 | | $4,364.00 |
| DM | $200 | 113.79 | -5% | $21,620.10 |
| CT | $200 | 20 | -5% | |
| | | | -5 hours | $3,795 |
| | | | | **Total** |
| | | | | $83,913.40 |

3. <u>Expenses</u>

Sullivan Gardner also seeks to recover its costs incurred in connection with the representation, which amount to $7,199.50. (Gardner Decl. ¶ 21). The firm includes detailed records reflecting the following costs: $3,996.65 in fees for service of trial subpoenas, investigation and research of each witness, and witness fees; $2,933.45 in copying and binding costs; and $269.40 in travel expenses. (<u>See</u> <u>id.</u>, Exh. E).

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (quoting United States Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); see also Miltland Raleigh-Durham v. Meyers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Expenditures for photocopies are routinely recoverable and should therefore be awarded in full. See, e.g., Cho, 524 F. Supp. 2d at 212 (allowing recovery of expenditures for color copying and reproduction). Likewise, expenditures for process servers, subpoenas, and witness fees are recoverable, Thorsen v. County of Nassau, No. CV 03-1022, 2011 WL 1004862, at *6 (E.D.N.Y. Mar. 17, 2011), as are travel expenses, LeBlanc-Sternberg, 143 F.3d at 763. Plaintiff does not dispute these costs. Thus, the Court finds that Sullivan Gardner's claimed $7,199.50 in costs and expenses is reasonable. See Stair, 722 F. Supp. 2d at 276 (including claimed fees in the charging lien when the client did not dispute them).

    4.    Contingency Fee

According to Sullivan Gardner, the retainer agreement that governed their representation of plaintiffs is a blended contingency and hourly fee agreement, entitling the firm to hourly payment as well as a contingency fee should the recovery exceed the amount of costs and expenses. The firm therefore asserts that it is entitled to a contingency fee in the amount of $5,670.07. (Gardner Decl. ¶ 22). However, "in the absence of a definitive ruling by the highest court of a particular state, a district court should predict what the highest state court" would likely do. Thus, "where an attorney

allegedly discharged without cause seeks unpaid legal fees pursuant to a blended contingency and hourly fee agreement . . . the attorney is limited to seeking relief in quantum meruit." Liddle & Robinson, LLP v. Garrett, 720 F. Supp. 2d 417, 425 (S.D.N.Y. 2010) (Leisure, J.). This Court agrees with Judge Leisure's reasoning and the conclusion in Liddle & Robinson. Indeed, the same would be true if this were a straight contingency retainer case. See Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004) ("'Recovery on a quantum meruit basis is called for even where the attorney discharged without fault was employed under a contingency fee contract.'"). Thus, Sullivan Gardner is not entitled to any fee based on the contingency clause in the retainer agreement.

    5.    Remaining Factors

As noted above, in determining the amount of a charging lien, the court should consider additional factors, such as the retainer agreement; the difficulty of the matter, the quality of counsel's performance, the results obtained, the time limitations imposed by the client or the circumstances, and the nature of the professional relationship with the client. See Stair, 722 F. Supp. 2d at 268-69, 272-73.

It is clear that in determining an attorneys' fee award for an attorney discharged without cause (as here) "the attorney is entitled to recover in quantum meruit the fair and reasonable value of the services rendered, whether that be more or less than the amount provided for in the retainer agreement." Shalom Toy, Inc. v. Each and Every One of the Members of the New York Prop. Ins. Underwriting Assoc., 658 N.Y.S.2d 1, 3 (App. Div. 1997). An important factor to consider here is the results obtained. The gravamen of plaintiffs' complaint was that defendants discriminated against

them on account of plaintiff Pilitz's gender by failing to include Pilitz's towing companies on a rotational towing list or by failure to provide the companies with tow calls, as required by regulations or policies, thus depriving plaintiffs of "the bread and butter of the towing business." (See Complaint at 7, 13-19). The settlement in this case required defendant Village of Freeport to pay plaintiffs monetary damages, and also (1) required Freeport to make reasonable attempts to investigate all complaints regarding the town's rotational towing system; (2) required the village to comply with its laws regarding the rotational towing system; (3) provided a mechanism for resolving disputes with plaintiffs; and (4) allowed Pilitz to review the rotational towing log and supporting police accident reports. (See Declaration of Brian Gardner in Further Support of Motion ("Second Garner Decl."), Exh. A at 3-5).

The Village of Malverne was similarly required to pay monetary damages, as well as required (1) to designate a supervisor to act as a liaison to licensed towers on the village's rotational tow list; (2) to allow licensed towers access to rotational tow logs; (3) to issue an order reminding officers of the rotational tow policy and take steps to see that it is followed; and (4) to reorder the rotational towers list. (Id., Exh. B at 3-4). The settlement agreement further required Malverne to investigate complaints regarding the rotational towing system. (See id. at 6). Thus, in addition to monetary relief, the settlement provided valuable relief to ensure that the alleged discrimination and other violations would no longer deprive plaintiffs of "the bread and butter of the towing business." Thus, Sullivan Gardner achieved success in the action that exceeds the relatively modest monetary relief provided to plaintiffs.

In addition, it should be noted that, although this was not an exceptionally difficult civil rights case, such as a complex class action suit, Sullivan Gardner was retained as counsel a mere

month-and-a-half before trial, and did not have the benefit of the Gold Firm's work product. (See Gardner Decl., ¶ 14; Second Gardner Decl. ¶ 4). Moreover, Sullivan Gardner represented plaintiffs through the contentious process of negotiating the specifics of the settlement agreement caused principally by plaintiffs' efforts to renegotiate the terms of the settlement placed on the record on July 30, 2010. (See, e.g., Second Gardner Declaration, Exhs. E & F). Thus, the circumstances of Sullivan Gardner's representation of plaintiffs rendered the case more difficult than it might seem at first glance. Sullivan Gardner performed effectively throughout. Therefore, having examined the factors outlined in Sequa Corp., the Court finds that a fee of $61,112.90 accurately reflects the reasonable value of Sullivan Gardner's services that remains unpaid.

B.   This Dispute is not Arbitrable Under Part 137 of the Rules of the Chief Administrator of the Courts

New York Compilation of Codes, Rules and Regulations Part 137 establishes the New York State Fee Dispute Resolution Program, which provides for resolution of fee disputes between attorneys and clients through arbitration and mediation. N.Y. Comp. Codes, R. & Regs., tit. 22, § 137.0. However, there are limits on the disputes that are arbitrable. As relevant here, disputes involving amounts greater than $50,000 cannot be arbitrated under the program unless the parties have consented. See N.Y. Comp. Codes, R. & Regs., tit. 22, § 137.1(b)(3). In this dispute, Sullivan Gardner asserts it is owed over $70,000. (See Gardner Decl. ¶ 2). The Court has found that Sullivan Gardner's reasonable fee is greater than $50,000. Therefore, the amount in dispute is greater than $50,000, and the issue cannot be arbitrated without Sullivan Gardner's consent. Moreover, even if it could, the arbitration would not impact this motion for a charging lien, because the remedies

available to an attorney to recover the value of his legal services, including arbitration and the attachment of a charging lien, are "cumulative rather than exclusive." Moody v. Sorokina, 856 N.Y.S.2d 755, 757 (App. Div. 2008).

## CONCLUSION

Because the reasonable value of Sullivan Gardner's services that is still unpaid exceeds the amount that plaintiffs recovered through the settlement of the action, Sullivan Gardner is entitled to a charging lien in the amount of $43,526.75, the full amount of the settlement proceeds.

**SO ORDERED:**

Dated: Central Islip, New York
November 17, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge